CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TIANA GAMINO, individually, and on behalf of all others similarly situated, | Case No.  8:24-cv-02698 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| RIVERSIDE NATURAL FOODS INC., | |
| Defendant. | |

Plaintiff Tiana Gamino ("Plaintiff") individually, and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, hereby brings this action against Riverside Natural Foods Inc. ("Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

### INTRODUCTION

1.     This is a consumer class action for violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and breach of implied warranties.

2.     This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to the manufacturing, marketing, and sale of Defendant's MadeGood® granola bars.

3.     The MadeGood® granola bars at issue come in the following flavors and were sold throughout the state of California and the United States within the proposed class period: Chocolate Chip, Mixed Berry, Strawberry, Chocolate Banana, Cookies & Cream, Holloween Chocolate Chip mini bars, Chocolate Drizzled Birthday Cake, Chocolate Drizzled Cookie Crumble, Chocolate Drizzled Vatiety pack, Holiday Sprinkles Chocolate Drizzled mini bars, Chocolate Drizzled Vanilla, and Variety Pack (the "Products").

4.     Defendant has misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products may contain metal.

5.     The Products contain pieces of metal from the manufacturing process. This is egregious, especially for a food product that is meant to be safe for consumption.

6.     Defendant specifically lists the ingredients in its Products, but fails to disclose that the Products contain, or are at risk of containing, metal. Defendant also claims that many of the Products are "safe for schools" when they are in fact not.

7.     Defendant's packaging, labeling, and advertising is intended to give consumers the reasonable belief that they are buying a premium product that will not contain a harmful substance such as pieces of metal.

8.      Metal can be a serious risk when it makes its way into foods and is consumed with food.

9.      Insofar as metal made its way into Defendant's Products on purpose, it should have been listed on the labeling. Insofar as it made its way into the Products by accident, it follows that it was due to poor manufacturing processes by either Defendant and/or their agents. Defendant has issued a recall for the Products as a result indicating that there is a significant problem with the Products.[1]

10.     Consumers like Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful metal pieces.

11.     Plaintiff and those similarly situated certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances like metal.

12.     Unfortunately for consumers, like Plaintiff, the food products they purchased contain and/or are at risk of containing metal.

13.     Defendant omitted telling consumers about the metals on the label of the Products (i.e., at the point of purchase), leading a reasonable consumer to believe they are not purchasing a Product with metal or at risk of containing metal. A reasonable consumer viewing Defendant's labels on the Products would reasonably believe they are purchasing a Product that is safe to consume and does not contain metal. Reasonable consumers expect the packaging to accurately disclose harmful substances that are likely to be in the Products on the Products' labeling.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3)

---

[1]  https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/riverside-natural-foods-inc-issues-voluntary-recall-select-madegood-granola-bar-products-over

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

15.     The Products are sold at numerous retail and online stores and Plaintiff is seeking to represent a class. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant. Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs. *See Montera v. Premier Nutrition Corp., No.* 16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), *aff'd,* 111 F.4th 1018 (9th Cir. 2024) (noting lodestar after jury trial in consumer protection action was $6,806,031.96). Thus, Plaintiff estimates that the amount in controversy exceeds $5 million.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff.

17.     The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold the alleged deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District since Plaintiff purchased the Products within this District.

CROSNER LEGAL, P.C.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROSNER LEGAL, P.C.

**PARTIES**

19.     Defendant is a Delaware corporation that maintains its principal place of business in Illinois. Defendant touts that it feels "a responsibility to step up and make the world better for everyone" and that they "feel an obligation to do things the right way." [2]

20.     Plaintiff Gamino purchased Defendant's Products in the Mixed Berry flavor in the six (6) count version approximately three times throughout 2024 at a retail Sprout's grocery store near her home residence in Santa Ana County, California. Plaintiff Gamino's most recent purchase of the Mixed Berry Product was approximately in November 2024. Plaintiff Gamino paid approximately $5.50 per Product which contains six (6) granola bars. When purchasing the Product, Plaintiff did not expect the Products to have a risk of having metal in them.

21.     Plaintiff saw and relied on the lack of a disclosure related to the presence of metal on the label of the Product when she purchased it.  Plaintiff would not have purchased the Products, or would have paid less for the Products, had she known that the Products contained metal and/or were at risk of containing metal. As a result, Plaintiff suffered injury in fact when she spent money to purchase the Products she would not have purchased, or would have paid less for, absent Defendant's misconduct.

22.     Plaintiff desires to purchase the Products again if the label of the Products was accurate and if the Products truthfully contained no metal. However, as a result of Defendant's ongoing material omissions and misrepresentations, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products. Considering the fact that the Plaintiff continues to see the Products for sale, she is at an imminent risk of future injury.

---

[2] *See* https://www.madegoodfoods.com/pages/sustainability

**FACTUAL ALLEGATIONS**

**THE LABELS DO NOT MENTION METAL**

23.    The labels for each of the Products fail to state that the Products contain metal thereby misleading reasonable consumers into believing that the Products are free from metal. The Products do in fact contain metal. Below is an example of a label for of the Products:



24.    On the back of the label, the ingredients list contains no mention of metal, instead it has pictures of vegetables implying that they are healthy and not contaminated with metal:



25.    Certain labels of the Products mention that the Products are "school safe".



**THE PRODUCTS CONTAIN METAL**

26.    Defendant's Products contain or are likely to contain metal.[3]

27.    The metal in the Products, if consumed orally or eaten, represents a safety hazard to consumers.

28.    Ingesting metal fragments can cause injury to the consumer.[4]  These injuries may include dental damage, laceration of the mouth/throat, or laceration or perforation of the

---

[3] https://www.cbsnews.com/news/granola-bar-recall-madegood/

[4]  https://www.fda.gov/files/food/published/Fish-and-Fishery-Products-Hazards-and-Controls-Guidance-Chapter-20--Metal-Inclusion-Download.pdf

CROSNER LEGAL, P.C.

intestine.[5]

29.    The FDA (and California's Sherman law which incorporates the FDA regulations, Cal Health & Safey Codde §§ 109875 *et seq*.) states that food products that contain any "foreign objects" like metal are considered to be unlawful under 21 U.S.C. 342.

### REASONABLE CONSUMERS ARE DECEIVED AND SUFFERED ECONOMIC INJURY

30.    Consumers, like Plaintiff, relied on Defendant's lack of disclosures regarding metal when purchasing the Products. The lack of disclosure of metal the labels of the Products is material to reasonable consumers.

31.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as metal, especially at the point of sale, and therefore must and do rely on defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Product's packaging and labels.

32.    The Products' packaging does not identify metal, metal is not listed on the labeling, and there is no warning about the inclusion, or even potential inclusion, of metal in the Products. This leads reasonable consumer to believe the Products do not contain and are not at risk of containing dangerous substances in food like metal.

33.    Consumers, like Plaintiff, want to know if a product they eat contains substances which are hazardous to their health. Defendants' nondisclosure of the presence of metal in the Products is material because reasonable consumers would deem the presence of metal in the Products to be important in determining whether to purchase Defendants' Products.  Defendants have exclusive knowledge that it adds metal to the Products. The fact that Defendants' Products contain metals is not reasonable accessible to Plaintiff and consumers. Consumers, like Plaintiff, trust that the food products they purchase do not contain metals which have been intentionally or negligently added to the products. Defendants have a duty to disclose the presence of metals in the Products because the fact is known to Defendants (it added the metals), and the failure to

---

[5]  https://www.fda.gov/files/food/published/Fish-and-Fishery-Products-Hazards-and-Controls-Guidance-Chapter-20--Metal-Inclusion-Download.pdf

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

disclose the metals in the Products is misleading. The high levels of dangerous substances such as the metals in the Products implicates a health concern that is important to reasonable consumers when deciding to purchase Defendants' Products. Defendants have actively concealed the high levels of metals in the Products from Plaintiff and putative class members.

34. A failure to disclose a fact constitutes actionable conduct if the omission goes to the central function of the product. Here, the Products' central function is for people to safely consume the Products. Food products which contain harmful metals do not serve their central function. Reasonable consumers, like Plaintiff, would deem it important in determining whether to purchase the Products because Plaintiff would not have purchased the Products had Plaintiff known that metals were in the Products. That is, the omission of the metal content of the Products was material because a reasonable consumer would deem it important in determining how to act in the transaction at issue.

35. A failure to disclose a fact constitutes actionable conduct if the omission causes an unreasonable safety hazard. Here, it is not reasonable to sell a product that consumers eat with metals. As explained above, metals are a safety hazard because they are unsafe to consume.

36. Defendants also made partial representations that the products are safe, including "everyone can indulge guilt-free," "Good for you and your tastebuds," "Non-GMO Project Verified," "Certified Gluten Free by GFCO," and "Certified Organic" which create the net-impression that the Products did not contain potentially harmful ingredients like metal. These partial disclosures are misleading because the metal content of the Products was not disclosed.

37. Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent.

38. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products and/or the price premium associated with the deceptive statements on the Products. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products contain metal in direct contradiction to the label.

CROSNER LEGAL, P.C.

## NO ADEQUATE REMEDY AT LAW

39.    Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

40.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Similarly, the UCL allows actions for unlawful contact that is alleged herein (see below).

41.    A primary litigation objective in this litigation is to obtain injunctive relief in the form of a warning label or an change to the manufacturing process to ensure that metal is not in the Products. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as not containing metal when the Products actually contain metal or are at risk of containing metal. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in California who purchased the Products for personal use until the date class notice is disseminated.

43.    Excluded from the Class are: (i) Defendant and their officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial

officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

44.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

45.    The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

47.    <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.    Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public (i.e., material omissions);

d.    Whether Plaintiff and the Class are entitled to injunctive relief;

e.    Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

48.    <u>Typicality</u>: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

49.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

50.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

CROSNER LEGAL, P.C.

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

51.     Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

52.     Plaintiff seeks preliminary and/or permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide restitution to Plaintiff and the Class members.

53.     Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act ("CLRA")

### Cal. Civ. Code §§ 1750, *et seq*.

54.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

55.     Plaintiff brings this claim under the CLRA individually and on behalf of the California Class against Defendant.

56.     At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

57.     At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

58.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

59.    The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

60.    Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products do not contain metal. Defendant failed to disclose that the Products contain metal. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain metal to be important to their decision in purchasing the Products. Defendant's representations and omissions violate the CLRA in the following ways:

a.   Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b.   Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c.   Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d.   Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

61.    Defendant violated the CLRA because the Products were prominently represented as safe for eating with no mention of metal but the Products contain metal. Defendant knew or should have known that consumers would want to know that the Products contain metal.

62.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

63.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

CROSNER LEGAL, P.C.

64.     Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

65.     Pursuant to California Civil Code section 1782, Plaintiff will notify Defendant in writing by certified mail of the alleged violations of the CLRA and will demand that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will amend the complaint to seek damages.

66.     Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

<u>**SECOND CLAIM FOR RELIEF**</u>

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

67.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

68.     Plaintiff brings this claim under the UCL individually and on behalf of the California Class against Defendant.

69.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

70.     Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45 (prohibiting deceptive practices affecting commerce), 21 U.S.C. § 343(a) (prohibiting false or misleading advertising of food products), Further, the FDA (and California's Sherman law

CROSNER LEGAL, P.C.

which incorporates the FDA regulations, Cal Health & Safey Code §§ 109875 *et seq.)* states that food products that contain any "foreign objects" like metal are considered to be unlawful under 21 U.S.C. 342.

71.    Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

72.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain metal) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant were unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

73.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no metal.

74.    Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

75.    Defendant's wrongful business practices and violations of the UCL are ongoing.

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

76.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

77.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF

### Breach of Implied Warranties

78.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint ,as though fully set forth herein.

79.    Plaintiff brings this claim for breach of implied warranties individually and on behalf of the California Class.

### *Implied Warranty of Fitness for a Particular Purpose*

80.    "An implied warranty of fitness for a particular purpose arises only where (1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985).

81.    Defendant was at all relevant times the manufacturer, distributor, and/or warrantor of the Products. Defendant knew or had reason to know of the specific use for which its Products were purchased.

82.     Defendant, through the acts and omissions set forth herein, in the sale, marketing, and promotion of the Products made implied representations to Plaintiff and the Class that the Products were fit for the particular purpose of use: that people can safely consume the Products and that the Products are healthy for eating. However, the Products are hazardous to consume and are not healthy.

### *Implied Warranty of Merchantability*

83.     At the time the Products were sold, Defendant knew or should have known that Plaintiff and members of the Class would rely on Defendant's skill and judgment regarding the safety and composition of the Products. Because the Products contain metal they are not of the same quality as those generally accepted in the trade and were not fit for the ordinary purposes for which the Products are used (i.e., to be eaten).

84.     The implied warranty of merchantability "provides for a minimum level of quality" in a good. *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 n. 2 (1995).

85.     To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015); *see also Mexia v. Rinker Boat Co*., 174 Cal. App. 4th 1297, 1303 (2009) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used."). "Such fitness is shown if the product is in safe condition and substantially free of defects[.]" *Mexia*, 174 Cal. App. 4th at 1303.

86.     "In cases involving human food, a party can plead that a product violates the implied warranty of merchantability through allegations that the product was unsafe for consumption, contaminated, or contained foreign objects." *Barnes v. Nat. Organics, Inc*., 2022 WL 4283779, at *8 (C.D. Cal. Sept. 13, 2022) (citing *Thomas v. Costco Wholesale Corp*., 2014 WL 5872808, *3 (N.D. Cal. Nov. 12, 2014).

87.     Here, the Products are consumed. The Products contain a dangerous substance which compromises the safety and fitness for consuming the Products. *See Barnes*, 2022 WL

CROSNER LEGAL, P.C.

4283779, at *8 (finding breach of implied warranty sufficiently pleaded where plaintiffs alleged that the product promoted a healthy pregnancy but was actually contaminated with heavy metals and was thus not favorable for pregnancy); *Rodriguez v. Mondelez Glob. LLC*, 703 F.Supp.3d 1191, 1212-13 (S.D. Cal. 2023) (same where plaintiffs alleged that the products were unsafe for consumption because they contained levels of lead or cadmium).

88.     By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant.

89.     Defendant's labeling and advertising, combined with the implied warranty of merchantability, constitute a warranty that the Products do not contain hazardous substances such as metal.

90.     In reliance on Defendant's skill and judgment and the implied warranties of fitness for this purpose and merchantability, Plaintiff and members of the Class purchased the Products to be consumed. Defendant knew that the Products would be purchased and used without further testing by Plaintiff and Class members.

91.     Consumers are the intended beneficiaries of the implied warranty as they are the ones Defendant made the Products for and specifically marketed the Products to consumers. Defendant breached the implied warranty of merchantability. Because the Products contain metal, they are not fit for ordinary use (i.e., consumption).

92.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products.

93.     Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven

CROSNER LEGAL, P.C.

19

at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for the loss of that money, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result. Injunctive relief is the primary goal of this litigation.

94.    Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive. Reasonable consumers would look down upon it and/or otherwise would despise such misconduct. This misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim as follows:

95.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

CROSNER LEGAL, P.C.

96.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

97.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

98.    Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

99.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

100.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

101.    Ordering other relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint.

Dated: December 13, 2024              CROSNER LEGAL, P.C.


                                     By:    */s/ Craig W. Straub*
                                            CRAIG W. STRAUB

                                     Craig W. Straub (SBN 249032)
                                     craig@crosnerlegal.com
                                     Michael T. Houchin (SBN 305541)
                                     mhouchin@crosnerlegal.com
                                     9440 Santa Monica Blvd. Suite 301
                                     Beverly Hills, CA 90210
                                     Tel: (866) 276-7637

                                     Attorneys for Plaintiff

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.

Civil Code Section 1780(d) Affidavit

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and are doing, business in California, including in this district. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed December 13, 2024 at San Diego, California.

By:      */s/ Craig W. Straub*

CLASS ACTION COMPLAINT